**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2015 OCT 28  PM 1:58

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| VICTOR ROJAS, | § |
|       Plaintiff | § |
| V. | § |
| | § |
| GINNIE KIRKPATRICK, in her official | §    A-15-CV-00354-SS |
| and individual capacities; CLAYTON | § |
| KLEEN, in his official and individual | § |
| capacities; J.P. WILSON, in his official and | § |
| individual capacities; GARY BOSHEARS, | § |
| in his offical and individual capacities; and | § |
| CHERYL POUNDS, in her official and | § |
| individual capacities, | § |
|       Defendants. | § |
| | § |

**ORDER**

ON THIS DAY the Court considered the Second Amended Complaint [Dkt. # 23] filed by Plaintiff, Victor Rojas, in the above styled cause; Defendants Ginnie Kirkpatrick, Clayton Kleen, J.P. Wilson, Gary Boshears (collectively, the "Officer Defendants") and the City of Granite Shoals ("the City")'s Answer to Plaintiff's Second Amended Complaint and Assertion of Immunity [Dkt. #29]; the Officer Defendants' and City's Motion and Brief to Dismiss For Failure to State A Claim [Dkt. #30], and Plaintiff's Response thereto [Dkt. #31]; Plaintiff's Objection and Motion to Reinstate Cheryl Pounds as a Defendant [Dkt. #22], Judge Pounds' Response thereto [Dkt. #26], and Plaintiff's Reply in Support thereof [Dkt. #32]. Having considered these documents, the applicable law, and the case file as a whole, the Court DENIES Plaintiff's Motion to Reinstate Judge Pounds as a Defendant [Dkt. #23], and GRANTS the Officer Defendants' and City's Motion to Dismiss [Dkt #30].

.

1

## I.   BACKGROUND

Plaintiff complains his home was illegally searched twice—once pursuant to a warrantless "general rummaging" search conducted by Officer Ginnie Kirkpatrick, assisted by Officer Clayton Kleen, and once pursuant to an invalid warrant issued by Municipal Court Judge Cheryl Pounds.   With regard to the second, warrant-based search, Plaintiff complains Judge Pounds issued the search warrant without the legal authority to do so, because she is not a licensed attorney. 2d Am. Compl. [Dkt. #23] at 7-8.  He further alleges the search warrant is not supported by probable cause because Kirkpatrick, the investigating officer, falsely stated that she could see roosters and paraphernalia commonly used in the offense of cockfighting in plain view when in fact these items were discovered during a warrantless "general rummaging" search of the property.  2d Am. Compl. [Dkt #23] at 8-10.

Plaintiff asserts the officers seeking the warrant knew they did not have probable cause based on their prior warrantless search, and the officers knew the non-attorney municipal court judge did not have the legal authority to issue the warrant.  *Id.*   Plaintiff alleges Judge Pounds was also aware of these defects at the time she issued the warrant.  *Id.*   Plaintiff contends the officers executing the warrant were or should have been aware of these defects, and their entry onto his property and seizure of the items listed in the warrant thus amounts to state law trespass and theft of Plaintiff's personal property.  *Id.*

Plaintiff brings claims under 42 U.S.C. § 1983 against Ginnie Kirkpatrick, the Granite Shoals police officer who sought the search warrant and conducted the search of his property pursuant to the warrant; Clayton Keen, the officer who assisted Kirkpatrick in her initial entry on to the property; Gary Boshears, the officer who assisted Kirkpatrick in executing the search warrant; J.P. Wilson, the Police Chief of Granite Shoals, who was responsible for "overseeing

2

Kirkpatrick," and Judge Cheryl Pounds, the Marble Falls municipal court judge who issued the challenged search warrant. 2d Am. Compl. [Dkt #23] at 4-5. Plaintiff additionally asserts state law claims against the Officer Defendants for trespass, conversion, intentional infliction of emotional distress, and negligence per se. *Id.*

## A.      Factual Allegations

Plaintiff's Second Amended Complaint attaches several exhibits, which are incorporated by reference in his otherwise-sparse description of events. "Significantly, because of [Plaintiff's] pro se status, [Fifth Circuit] precedent compels [the Court] to examine all of his complaint, including the attachments." *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005). The Court does not construe the attachments as evidence, but as "'amendments to the complaint'" that "'embellish[] the original complaint's averments.'" *Id.* (quoting *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983)).[1]  Reading these attachments together with the more conclusory account of Plaintiff's grievances contained in his Second Amended Complaint, the Court understands Plaintiff to allege the following:

On April 2, 2015, Officer Kirkpatrick, accompanied by Officer Kleen, came to the Rojas property seeking to make contact with non-party, Raul Rojas, on an unrelated matter. *Id.* at Ex. 2. There are two single-wide mobile homes facing each other, perpendicular to the road, on the property. *Id.* Officer Kirkpatrick knocked on the front door of the mobile home located on the west side of the property and no one answered the door. *Id.* Officer Kirkpatrick's affidavit

---

[1] Specifically, Plaintiff has included as Exhibits 1 through 5: (1) the challenged search warrant, (2) the affidavit of Ginnie Kirkpatrick supporting the application for the search warrant, (3) the Return and Inventory listing items photographed and/or seized in the search pursuant to the warrant, (3) a photograph of ribbons won by Victor Rojas' birds at a Texas Gamefowl Breeders Poultry Show on April 5, 2014, (4) two photographs of Stephen Hinds, the Vice President of the Texas Gamefowl Breeders' Association, standing with roosters bred by Victor Rojas, and (5) an affidavit by Hinds attesting to Rojas' good history as a breeder of gamefowl, describing the Rojas property, and opining that the gamefowl operations are not visible from the front door of either of the Rojas trailers. 2d. Am. Compl. [Dkt. #23] at Ex. 1-5.

states that she could "see and hear roosters coming from the south side of the property." *Id.* Rojas, however, asserts "[f]rom the front door of either of the mobile homes on the property you can not see [Plaintiff's] birds, and you have to actually go to the back of the property before you can 'see' the birds." *Id.* at Ex. 5. Rojas contends the act of walking past the mobile homes to the back of the property constituted a warrantless search, but he does not appear to contest Kirkpatrick's affidavit to the extent Kirkpatrick states that, once past the mobile homes, she could see multiple cages containing roosters, some containing roosters housed with hens, several roosters "running at large on the property," and a table on which a hand saw, a transport cage, and several empty medicine boxes and wound dressings were visible. *Id.* at Ex. 2.

Kirkpatrick's affidavit states she could see that "all of the roosters had the spur of their foot cut or shaved off," a statement Rojas does not dispute. *Id.* Kirkpatrick avers shaving the spur is common practice in cockfighting in order to allow a metal spur to be attached to the rooster's leg. *Id.* Kirkpatrick's affidavit further states that, after leaving the property, she researched the medications listed on the empty medicine boxes and determined they were commonly used to stimulate performance and fertility in roosters used for cockfighting. *Id.* Based on these observations, Kirkpatrick sought a search warrant to look inside the mobile homes and sheds on the property and to seize the materials and photograph the birds found on the property. *Id.* Kirkpatrick's probable cause affidavit states she believes, based on her research into the offense of cockfighting, the items she saw at the Rojas property were used in the commission of this offense. *Id.*

In reliance on Kirkpatrick's affidavit, Marble Falls Municipal Court Judge Cheryl Hinds issued a warrant to search "the entire premises and curtilage, if the location is a residence, including garages, sheds, outbuildings, and vehicles found to be under the control of the persons

4

named below where the items to be seized might reasonably be kept or hidden." *Id.* at Ex. 1. The warrant listed specific items to be seized: "Medications to treat wounded animals, vitamins or stimulants used for roosters, feed used to feed roosters, metal spurs used on roosters [sic] feet for fighting, transporting cages for relocation, spur clippings, handsaws/knives, or cutting mechanisms used for spur cuttings, receipts, records, flyers, betting ledgers, schedules from previous fights, and photographing all roosters." *Id.*

Officer Kirkpatrick returned to the property on April 8, 2014 with Officer Boshears to execute the warrant. 2d Am. Compl. at 10. Kirkpatrick and Boshears searched the sheds and the inside of the mobile home where Plaintiff lives. *Id.* The officers did not search the second mobile home on the property. *Id.* The officers seized vitamins, antibiotics, two metal spurs, and various other items, and photographed Plaintiff's birds. *Id.* at 10 and Ex. 3.

### B.    Procedural History

None of the parties allege any criminal charges have been filed against Rojas as a result of the April 2, 2015 search or the April 8, 2015 search and seizure. On April 27, 2015, Rojas filed suit in state court alleging the conduct of Officer Kirkpatrick, Officer Kleen, Judge Pounds, and Police Chief Wilson violated his constitutional rights, and the searches amounted to trespass and theft under Texas law. Not. Removal [Dkt. #1], Ex. 1, Orig. Pet. Because Plaintiff seeks relief pursuant to Section 1983 for alleged violations of federal constitutional law, Defendants timely removed the case based on federal question jurisdiction. Not. Removal at 2. After removal, Rojas amended his complaint to sue the named defendants in both their official and individual capacities and to add additional city officials as Defendants. 1st Am. Compl. [Dkt. #7] at 4. Following motions to dismiss, this Court dismissed all of Plaintiff's claims except those against the individual Officer Defendants, and ordered Plaintiff to replead his claims against the

individual Officer Defendants with specificity in light of their assertions of qualified and official immunity. Order of July 16, 2015 [Dkt. #21].

Plaintiff has now submitted a Second Amended Complaint, adding Officer Boshears as a Defendant and seeking to reinstate Judge Pounds as a Defendant. 2d Am. Compl. [Dkt. #23]. Plaintiff also submitted his Objection and Motion to Reinstate Cheryl Pounds as a Defendant [Dkt. #22]. The Officer Defendants and the City, collectively, have submitted a second motion to dismiss for failure to state a claim, contending that Plaintiff again failed to plead facts sufficient to overcome their assertions of immunity. Mot. Dism. [Dkt. #30].

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570.

Further, although qualified immunity is an affirmative defense, "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). When the defense of qualified immunity is raised in a motion to

6

dismiss, the complaint is subject to a heightened pleading requirement, which requires "claims of specific conduct and actions giving rise to a constitutional violation." *Cunningham v. City of Balch Springs*, No. 3:14-CV-59-L, 2015 U.S. Dist. LEXIS 80145 (N.D. Tex. June 19, 2015) (citing *Schultea v. Wood*, 47 F.3d 1427, 1432, 1434 (5th Cir. 1995) (en banc)).

Ordinarily, a court reviewing a motion to dismiss under Rule 12(b)(6) should not consider matters outside the pleadings. FED. R. CIV. P. 12(d). If extrinsic evidence is considered, the motion should be converted (with adequate notice to the parties) into a motion for summary judgment. *Id.* In this case, the Court finds Defendants' motion to dismiss should be decided as a 12(b)(6) motion, notwithstanding the fact that Plaintiff has attached numerous exhibits to his Response. *See* Resp. [Dkt. 31], Ex. 1-20. The majority of the Response exhibits are copies of legal authorities, which are not evidence and which are properly within the Court's consideration of the law relevant to the case. Resp. [Dkt. #31], Ex. 1-11, 14-15, 19. Some of the Response exhibits mirror those attached to the Second Amended Complaint, and can therefore be considered without going outside the pleadings. *Id.* at Ex. 12, 13. To the extent Plaintiff's response attaches news report and commentary concerning events unrelated to the search of Plaintiff's residence, the court in its discretion declines to consider these extrinsic materials. *Id.* at Ex. 16, 17, 20, and portions of Ex. 5, 6. Finally, Plaintiff has included a Response exhibit containing his own unsworn statement of events, which the Court will construe, in light of his *pro se* status, as additional argument. Ex. 19; *see also Clark*, 119 F. App'x at 667; *Howard*, 707 F.2d at 220. Considering these materials and the Second Amended Complaint together in the light most favorable to the Plaintiff, the Court finds Rojas has not asserted any claims that survive Defendants' various immunity defenses for the reasons set out in detail below.

## III.  ANALYSIS

### A.  Judge Pounds Acted Within the Scope of Her Authority

This Court has already dismissed Plaintiff's claims against Judge Pounds because she is entitled to absolute judicial immunity for her issuance of the search warrant. Order of July 16, 2015 [Dkt #21]. Plaintiff, however, seeks to reinstate her as a defendant,[2] asserting the Texas Code of Criminal Procedure requires that a search warrant be issued by a magistrate who is also a licensed attorney. TEX. CODE CRIM. P. Art. 18.01(c)). Judge Pounds was not an attorney at the time she issued the search warrant and therefore, Plaintiff alleges, she acted without jurisdiction and should not enjoy absolute immunity. Mot. Reinstate [Dkt. #22] at 3.

Plaintiff is partially correct, in that "[o]nly judges of municipal courts of record licensed as attorneys, statutory county or district judges, or judges from the Court of Criminal Appeals or Supreme Court may issue evidentiary warrants under [Texas Code of Criminal Procedure] article 18.02(10)." *Scott v. State*, 868 S.W.2d 430, 432-33 (Tex. App.—Waco 1994, pet. ref'd). It is equally well settled, however, that "if the item sought to be seized is listed in article 18.02 [subsections (1) through (9)] then any magistrate may issue the warrant." *Id.* at 433. Judge Pounds, as a municipal court judge, is indeed a magistrate, regardless of whether she is also a licensed attorney. TEX. CODE CRIM. P. Art. 2.09. Therefore, Judge Pounds is authorized to issue warrants pursuant to Article 18.02, subsections (1) through (9). *Scott*, 868 S.W.2d at 432-33.

The classification of a warrant is an issue of law for the Court to decide. *State v. Young*, 8 S.W.3d 695, 698 (Tex. App.—Fort Worth 1999, no pet). It is important to note that Subsection

---

[2] Plaintiff's Motion to Reinstate Cheryl Pounds as a Defendant asserts only his Section 1983 claims based on alleged federal Constitutional violations, and does not address the state law claims originally plead against Judge Pounds. [Dkt. #22] at 4-5. Therefore, nothing in this Motion to Reinstate would cause the Court to revisit its Order of July 16, 2015 [Dkt. #21] insofar as it dismisses the state law claims against Judge Pounds.

(10)—the only section that requires an attorney magistrate to issue the warrant—"is a 'catch-all section' that only applies when the other sections do not." *Id.* In this case, the warrant issued by Judge Pounds lists thirteen specific categories of items that constitute "property specially designed, made, or adapted for or commonly used in the commission of an offense," TEX. CODE CRIM. P. Art. 18.02(2), or alternatively, "implements or instruments used in the commission of a crime" *Id.* at Art. 18.02(9). This is not a Subsection (10) warrant, and Judge Pounds was well within her authority to issue it as a magistrate judge sitting for the City of Marble Falls Municipal Court. *Id.* at Art. 2.09.[3] Therefore, Judge Pounds is entitled to absolute judicial immunity for her actions in this matter, and Plaintiff's motion to reinstate her as a defendant [Dkt. #22] is DENIED. All claims asserted in Plaintiff's Second Amended Complaint against Judge Pounds in her individual and official capacities are DISMISSED with PREJUDICE.

### B.      Plaintiff Fails to Allege Facts Supporting Any Viable State Law Claims

Plaintiff's Second Amended Complaint alleges state and federal claims against Defendants Kirkpatrick, Kleen, Wilson, and Boshears in their "official and individual capacities." 2d Am. Compl. [Dkt. #23]. By suing the Officer Defendants individually and officially, Plaintiff has filed suit against both the individual employees and the governmental unit on whose behalf they are acting in their official capacities. *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 852-53 (S.D. Tex. 2014). His state law claims are therefore subject to the election of remedies provision of the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE § 101.106(E). This section states "if a suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the

---

[3] This Court will not re-engage Plaintiff's arguments concerning Judge Pounds' alleged intentional or negligent malfeasance in issuing the warrant. Once judicial immunity attaches, it is "not overcome by allegations of bad faith or malice and '*applies even when the judge is accused of acting maliciously and corruptly.*'" *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (emphasis in *Ballard*).

governmental unit." *Id.* The City of Granite Shoals has invoked this statutory provision. Ans. to 2d Am. Compl. [Dkt. #29] at 5. Plaintiff's state law tort claims against the individual defendants are therefore barred. TEX. CIV. PRAC. & REM. CODE § 101.106(E); *Bustos v. Martini Club*, 599 F.3d 458, 463 (5th Cir. 2010).[4]

Plaintiff's state law claims against the Defendants in their official capacities are viable only if they are claims for which sovereign immunity is waived under the Texas Tort Claims Act. *City of El Paso v. Heinrich*, 284 S.W. 3d 366, 380 (Tex. 2009) ("governmental immunity protects government officers sued in their official capacities to the extent it protects their employers"). The Texas Tort Claims Act governs "all tort theories that may be alleged against a governmental entity whether or not it waives that immunity." *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 415 (5th Cir. 2015); *Franka v. Velasquez*, 332 S.W.3d 367, 378 (Tex. 2011) (holding that tort suits against the government are brought "under the act" regardless of whether the TTCA waives the government's immunity).

Reading Plaintiff's Second Amended Complaint liberally, he asserts state law claims for trespass, intentional infliction of emotional distress, and conversion of personal property. *See* Resp. [Dkt. #31] at 4-5. These are intentional torts, for which the Texas Tort Claims Act does not waive governmental immunity. TEX. CIV. PRAC. & REM. CODE § 101.057; *Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d 374, 387 (Tex. App.—Eastland, 2006, no pet.). Therefore,

---

[4] The individual officer defendants have asserted they are entitled to official immunity against state law tort claims. Mot. Dism. [Dkt. #30] at 6; *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (defining official immunity). Because Plaintiff cannot maintain state law tort claims against the individual officer defendants in the face of the City of Granite Shoals' invocation of the Texas Tort Claims Statute's election of remedies provision, the Court does not engage in a detailed discussion of the official immunity claims. The Court does note, however, that the official immunity analysis closely tracks the qualified immunity analysis for individual officer liability under federal law. *Telthorster v. Tennell*, 92 S.W.3d 457, 460 (Tex. 2002) ("official immunity's good faith element requires the defendant to show that a reasonably prudent officer, under the same or similar circumstances, could have believed the disputed conduct was justified based on information the officer possessed when the conduct occurred"). Therefore, Plaintiff's state law claims against the officer defendants are not only barred by the City's election of remedies pursuant to TEX. CIV. PRAC. & REM. CODE § 101.106(E), but the individual defendants are entitled to official immunity on these state law claims to the same extent they are entitled to qualified immunity on Plaintiff's Section 1983 claims. *Telthorster*, 92 S.W.3d at 460.

these claims cannot be maintained against the officer defendants in their official capacities. *Watley*, 216 S.W.3d at 387.

To the extent Plaintiff seeks to assert claims for negligence against the Defendants in their official capacities, the Texas Tort Claims Act requires him to establish a use of property caused his damages. TEX. CIV. PRAC. & REM. CODE § 101.021; *Bohannan v. Doe*, 527 F. App'x 283, 301 (5th Cir. 2013). "Property does not cause an injury if it only furnishes a condition that makes injury possible. . . . The use of the property must be a substantial factor in bringing about the injury." *Bohannan*, 527 F. App'x at 301 (internal citations omitted). Plaintiff has not identified any negligent use or misuse of tangible property by the officers that proximately caused his alleged damages. *See id.* Therefore, his negligence and negligence per se claims against the officer defendants in their official capacities must fail. *Id.*

Plaintiff seeks not only money damages (which are barred by the state's immunity from suit, as discussed above), but also requests various forms of injunctive or declaratory relief. To the extent these claims for nonmonetary relief are grounded in state law, they are not barred by sovereign immunity. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007). Plaintiff, however, lacks standing to seek injunctive or declaratory relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" sufficient to justify injunctive or declaratory relief. *Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003). Plaintiff complains of events that took place in April of 2015, and has not alleged "any facts or circumstances showing that there is a 'real and immediate threat that he will again suffer a similar injury in the future." *Humphreys v. City of Ganado*, 467 F. App'x 252, 257 (5th Cir. 2012) (internal quotations omitted). As Plaintiff has not alleged facts that "demonstrate either

11

continuing harm or a real and immediate threat of repeated injury in the future," neither declaratory nor injunctive relief is appropriate in this case. *Id.*[5]

### C.    Plaintiff's Section 1983 Claims Fail

Plaintiff asserts Section 1983 claims against the Officer Defendants in their individual and official capacities based on various alleged violations of federal constitutional law. Although Plaintiff invokes multiple constitutional provisions as the foundation for his complaint, Plaintiff's claims are all grounded in his factual allegations concerning the warrantless search of his property on April 2, 2015 and the subsequent application for and execution of an allegedly defective search warrant based on this first warrantless search.   "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims.'"   *Albright v. Oliver*, 510 U.S. 266, 274-75 (U.S. 1994) (internal citations omitted).   Therefore, Plaintiff's constitutional claims must be analyzed as claims for unreasonable search and seizure under the standards applicable to review of Fourth Amendment violations. *Albright*, 510 U.S. at 273; *Cuadra v. Houston Indep. Sch. Dist.* 626 F.3d 808, 814 (5th Cir. 2010).

#### 1.    *Officer Kirkpatrick is Entitled to Qualified Immunity*

All of Plaintiff's claims against Officer Kirkpatrick are rooted in the question of whether Officer Kirkpatrick saw the items that supported her probable cause determination "in plain sight and on open fields," Mot. Dism. [Dkt. #30] at 4, or whether these items were located in an area

---

[5] This standing defect applies with equal force to Plaintiff's claims for injunctive and declaratory relief arising out of Section 1983.  *Bauer*, 341 F.3d at 357-58.

in which Plaintiff had a reasonable expectation of privacy. *United States v. Dunn*, 480 U.S. 294, 301 (1987).

Taking the facts alleged by Plaintiff at face value, Officer Kirkpatrick and Officer Kleen approached Rojas' home to talk to one his family members. 2d. Am. Compl. [Dkt. #23] at Ex. 2. At least two cars were parked on the property, but no one answered the door. *Id.* Nothing about this initial attempted "knock and talk" attempt was unconstitutional. *Carroll v. Carman*, 135 S. Ct. 348, 350-52 (2014); *see also United States v. Walters*, 529 F. Supp. 2d 628, 641-42 (E.D. Tex. 2007). "Officials generally have an implied license to enter property to visit and converse with the owner just as a private citizen might." *Hoffmann v. Marion County*, 592 F. App'x. 256, 258-59 (5th Cir. 2014) (*citing Florida v. Jardines*, 133 S. Ct. 1409, 1415-17 (2013)).

According to Plaintiff, the area housing the roosters was not visible from the front door of his trailer. 2d. Am. Compl. [Dkt. #23] at Ex. 5. There is, however, no rule in the Fifth Circuit prohibiting officers from "circl[ing] around the back of the trailer" as part of their attempts to conduct a knock and talk. *Cleveland v. Liberty County Sheriff's Dept.*, No. 14-40691, 2015 U.S. App. LEXIS 17374, *4 (5th Cir. Sep. 30, 2015) (publication pending). In fact, as recently as 2014, the United States Supreme Court held that there is no clearly established Fourth Amendment violation if police officers conducting a knock and talk attempt to make contact by approaching the back or sides of a dwelling. *Carroll v. Carman*, 135 S. Ct. 348, 350-52 (2014).

In response, Rojas cites a Texas state trespassing statute and asserts "[t]he property at 914A Churchill road [sic] is fenced as to obviously keep people out." Resp. [Dkt. #31] at 4. Plaintiff's reliance on state trespassing law is unavailing. Even where a gated fence surrounds the property, if the officers "reasonably believe the gate provided the principal means of access . . . through which they could approach the front door," the Fourth Amendment is not

violated by entering the fenced yard to attempt a knock and talk. *U.S. v. Thomas*, 120 F. 3d 564, 572 (5th Cir. 1997). Neither is the Fourth Amendment violated by an officer's observation of items that are in plain view from the officer's vantage point during the course of the attempted knock and talk. *Cleveland*, 2015 U.S. App. LEXIS 17374 at *10; *Thomas*, 120 F. 3d at 568; *see also United States v. Cooke*, 674 F.3d 491, 493-494 (5th Cir. 2012) (finding items viewable in an enclosed area adjacent to the house were not protected by the Fourth Amendment because the area was one into which "any member of the public would have gone to knock at the defendant's front door.").

In this case, the Rojas property may have been fenced, but there is no factual allegation that would suggest the fence properly excluded the officers from entering to access the front door of the mobile home for a knock and talk. *Thomas*, 120 F. 3d at 572. Furthermore, it is not unreasonable for officers to "circle[] around the back of the trailer" in the course of a knock and talk, particularly in circumstances like these, where a knock on the front door yields no answer but the presence of multiple cars on the property indicates someone may be home. *Cleveland*, 2015 U.S. App. LEXIS 17374, at *4; *see also Carroll*, 135 S. Ct. at 350-52.; *see also Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006) (collecting cases).

The Court finds the items supporting Kirkpatrick's probable cause affidavit were in plain sight from her vantage point in a place where she was lawfully allowed to be in the course of an attempted knock and talk. *Thomas*, 120 F. 3d at 568. Additionally and in the alternative, the Court notes items located on private property outside the curtilage of the home are generally subject to warrantless inspection under the "open fields" doctrine—even where the property at issue is neither "open" nor a "field" in the traditional sense. *Oliver v. U.S.*, 466 U.S. 170, 180 n.22 (1984). The Supreme Court has explained, "[i]t is not generally true that fences or 'No

Trespassing' signs effectively bar the public from viewing open fields in rural areas." *Id.* at 179. Further, the Supreme Court has explicitly rejected the concept that a fence sufficient to ward off trespassers is sufficient to limit the "open fields" exception to the Fourth Amendement. *Id.* at 182-83. Instead, the primary focus is whether the area in question "harbors those intimate activities associated with domestic life and the privacies of the home." *United States v. Dunn*, 480 U.S. 294, 301 (1987). Thus, one of the seminal cases outlining the open fields doctrine found that an area located on a rural property, enclosed by a "perimeter fence" and additional "similarly constructed interior fences," but without any earmarks of intimate, private use, was subject to the open fields exception. *Id.* at 303-04. Similarly, where a part of the property is used for public activities and is accessible or viewable to the public, it comes within the open fields exception notwithstanding the fact that it is within close proximity to the residence itself. *See, e.g., United States v. Salinas*, 538 F. App'x 574, 574-75 (5th Cir. 2013) (a horse trailer located approximately 15 feet from the home, in an area that "was not enclosed, was visible from the street, and was used for parking vehicles and equine-related activities" was within the open fields, not the curtilage, of the residential property). Where multiple residences share a common area of the property, that common area is not within the curtilage of the homes. *Mack v. City of Abilene*, 461 F.3d 547, 553-555 (5th Cir. 2006).

In this case, Rojas has alleged the south side of the property is used for raising gamefowl for exhibition. *See* 2d Am. Compl. [Dkt. #23] at Ex. 5; Resp. [Dkt. # 31] at Ex. 18. This agricultural and commercial activity is not part of the intimate activities of daily life that are generally protected by the concept of curtilage. *Dunn*, 480 U.S. at 301; *see also Cooke*, 674 F.3d at 493-94; *Salinas* 538 F. App'x at 574-75. Rojas also acknowledges there are two separate mobile homes on the property. 2d Am. Compl. [Dkt. #23] at Ex. 2; Resp. [Dkt. #31] at Ex. 18.

15

Given that Rojas bears the burden of rebutting Kirkpatrick's qualified immunity defense, *Collier*, 569 F.3d at 217, his bald assertion that the property is fenced to keep out trespassers is insufficient to rebut the "plain view and open fields" justifications for Kirkpatrick's investigation of the gamefowl in the course of her attempted knock and talk.  Mot. Dism. [Dkt. #30] at 4.

Officer Kirkpatrick did not violate Rojas' Fourth Amendment rights—certainly not any well-established Fourth Amendment rights—when she entered the fenced property to conduct a knock and talk and walked around to the back of the mobile home. *Carroll*, 135 S. Ct. at 350-52. The gamefowl were visible in plain view from this vantage point, which justifies Kirkpatrick's observations and application for a search warrant.  *Thomas*, 120 F. 3d at 568; *see also Cooke*, 674 F.3d at 493-94.

Furthermore, Rojas' own factual allegations establish the area housing the gamefowl is not part of the "intimate activities of the home."  *Dunn*, 480 U.S. 294 at 301.  Rather, Rojas' factual allegations establish the property at issue is a fenced rural property containing at least two mobile home residences, and the specific area of the property at issue was used for an agricultural commercial enterprise—breeding and selling gamefowl.  2d Am. Compl. [Dkt. #23] at Ex. 2, Ex. 5; Resp. [Dkt. #31] at Ex. 18.  In these circumstances, the open fields exception to the Fourth Amendment applies, and Officer Kirkpatrick is entitled to qualified immunity for her actions in searching the area.  *Dunn*, 480 U.S. 294 at 301.  Because Officer Kirkpatrick's initial search was not tainted, neither was her application for a search warrant in reliance on the items she saw in plain sight and in open fields.  *Daniel v. Compass*, 212 F. App'x 262, 267-68 (5th Cir. 2006).

### 2.    *The Remaining Officers Are Entitled to Qualified Immunity*

The liability of the other officers is not dependent on the same factual distinctions as

Kirkpatrick's, because each of the remaining officers participated in the searches—if at all—at Kirkpatrick's direction.   In general, "an officer may rely on information supplied by other officers that indicates that an offense has occurred." *United States v. Luckey*, 402 F. App'x 889, 889-90 (5th Cir. 2010); citing *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).   Liability for preparing an allegedly false or deficient warrant application extends only only to the officer who actually prepared the application—in this case, Kirkpatrick. *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005).   Specifically, an officer (such as Kleen) who allegedly participated in providing information relevant to the warrant, but who did not prepare or present the warrant itself, is not "in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions." *Id.*   Instead, participating officers are authorized to rely on the information and direction provided by the investigating officer. *Luckey*, 402 F. App'x at 889-90; *see also Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) (officers who were "involved in the procurement process but were not the affiant or preparer of the affidavit" were entitled to qualified immunity).   Therefore, Plaintiff has not stated a claim on which relief can be granted against Kleen for his alleged participation in procuring the challenged search warrant. *Hampton*, 480 F.3d at 365.

Similarly, officers executing a warrant are entitled to rely in good faith on a facially valid warrant and have no independent duty to investigate the basis of the probable cause outlined in the warrant. *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012); *United States v. Kelley*, 140 F.3d 596, 602 (5th Cir. 1998).   Because the warrant lists specific items to be seized, Rojas has failed to allege facts sufficient to support his alternative claim that the warrant was too general to satisfy constitutional requirements. *Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir. 1990).   On its face, the Amended Complaint (through its attachments) describes a search of the

premises on April 8, 2015 that was within the parameters specified by the warrant. *See, e.g.* Resp. [Dkt. # 31] at Ex. 18 (Statement of Victor Rojas). Because the warrant was facially valid and Rojas has not alleged the search exceeded the scope of the warrant, he has not stated any claim for which relief can be granted against Officer Boshears for his role in executing the warrant. *Triplett*, 684 F.3d at 504.

### 3.  *Plaintiff Has Not Alleged Facts to Support Supervisor Liability*

Finally, Plaintiff asserts claims against Granite Shoals Police Chief, J. P. Wilson. 2d Am. Compl. [Dkt. #23] at 5. Rojas does not allege any direct involvement by Wilson in the events surrounding the search of his home, the application for the warrant, or the execution of the warrant. Instead, Rojas alleges Wilson is liable for failure to train and supervise Kirkpatrick and her fellow officers in the performance of their duties. *Id.*

Neither Wilson nor the City of Granite Shoals can be held liable on a *respondeat superior* theory under Section 1983. *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658 (1978). In order to hold Wilson liable under Section 1983, Plaintiff must state factual allegations sufficient to show "(1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citations omitted).

Rojas' Second Amended Complaint states that Wilson "is responsible for overseeing Kirkpatrick who ha[d] been a commissioned police officer for less than a month" at the time of these events. 2d Am. Compl. [Dkt. #23] at 5. In support of this claim, Rojas recites the truism that "Wilson has an obligation to train his police officers for the recurring tasks that officers will

18

face during their career." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).  These statements do nothing to identify any actual deficiency in Kirkpatrick's training that is causally linked to the alleged Fourth Amendment violations Plaintiff claims, much less any deficiency in Kirkpatrick's training that is attributable to deliberate indifference on the part of Wilson. *Roberts*, 397 F.3d at 292.  Therefore, Rojas has failed to state a claim for supervisory liability under Section 1983. *Id.* [6]

## IV.    Conclusion

IT IS ORDERED that Plaintiff's Objection and Motion to Reinstate Cheryl Pounds as a Defendant [Dkt. #22] is DENIED.  Plaintiff's Second Amended Complaint as to Judge Pounds is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Officer Defendants' and the City's Motion and Brief to Dismiss For Failure to State A Claim [Dkt. #30] is GRANTED.  Plaintiff's claims against Defendants Ginnie Kirkpatrick, Clayton Kleen, J.P. Wilson, and Gary Boshears in their individual and official capacities are DISMISSED WITHOUT PREJUDICE.


Signed this the 28 day of ___October___, 2015.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[6] To the extent Plaintiff seeks to sue the City directly, his claim fails for the same reason: Plaintiff's complaint lacks any factual allegation identifying a City policy encouraging or recklessly disregarding the risk that the misconduct alleged by Plaintiff would occur. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (citing *City of Canton*, 489 U.S. at 390-91).